UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| THE ABSTRACT & TITLE GUARANTY CO., INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05-cv-0188-JDT-TAB |
| | ) | |
| CHICAGO INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 26, 33)[1]**

Plaintiff The Abstract & Title Guaranty Co., Inc. ("ATG") brings this diversity action seeking coverage for claims allegedly insured by Defendant Chicago Insurance Company ("CIC") under an errors and omissions policy.  ATG contends that CIC improperly denied coverage for claims brought against it related to real estate and closing services it provided to Royal Haven Builders, Inc. and other related entities.  It brings two counts against the Defendant, breach of contract and failure to deal in good faith.  (Compl. ¶¶ 29-48.)

Both parties now move for summary judgment pursuant to Federal Rule of Civil Procedure 56, ATG for partial summary judgment on its breach of contract claim, asserting that CIC breached its duty to defend and failed to pay damages, as required by the insurance policy entered into by the parties.  CIC seeks summary judgment on

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

both claims, contending that there is no genuine issue of material fact remaining for trial. Both motions are fully briefed and ripe for determination, and the court now rules on them as follows.

## I.    BACKGROUND

CIC issued to ATG Errors and Omissions Policy No. 88T-2001123, which allowed for coverage for damages and expenses resulting from any claim brought against ATG, and CIC's defense thereof, with several exceptions that were articulated in the Policy. The Policy set a policy period of November 6, 2001 through December 24, 2002 (the "Policy").  It provided for limits of liability of $500,000 for each claim and in the aggregate, with a deductible of $10,000 for each claim.

During the policy period, ATG reported to CIC ninety-six claims made against it that apparently arose from actions taken by ATG employees with respect to real estate and closing services it provided to Royal Haven Builders, Inc., its principal Eric Turner, and other related entities.  The claims apparently involved allegations of negligent title searches, failing to discover or report recorded instruments affecting title, violating escrow instructions and failing to obtain releases of prior recorded liens.  The claims were made by Stewart Title Insurance Company, Old Republic Insurance Company, Lawyers Title Company and Chicago Title Insurance Company, among others, and some ultimately took the form of lawsuits against ATG.  The total liability of the claims at issue was $15,000,000.  Evidently, ATG settled some claims independent of CIC's involvement.

2

In response to the claims asserted against ATG, instead of providing a defense in the lawsuits filed against ATG, on April 23, 2003, CIC filed an interpleader action with this court, and deposited the Policy Limits of $500,000 into the court registry.  It apparently did not seek or receive ATG's approval to initiate the interpleader action. After extensive litigation during which numerous claimants asserted their rights to the funds, on December 17, 2004, the parties entered into a settlement of all claims, which was approved by the court on February 28, 2005.  Among the settlement terms was a $120,500 payment to ATG to cover its attorneys' fees and costs in the defense of the claims against it.

## II.      STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. of Civ. Pro. 56(c).  When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  On cross-motions for summary judgment, each movant must individually satisfy

3

the requirements of Rule 56, *ITT Indus. Credit Co. v. D.S. Am., Inc.*, 674 F. Supp. 1330, 1331 (N.D. Ill. 1987), and the traditional rules for summary judgment apply even though both parties have moved for summary judgment. *Blum v. Fisher & Fisher*, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997).

## III.   DISCUSSION

Both parties move for summary judgment under Federal Rule of Civil Procedure 56. ATG moves on its first claim only—that CIC breached the terms of the Errors and Omissions Policy by failing to defend ATG in lawsuits filed against it and not indemnifying ATG for damages incurred therefrom. ATG more specifically contends that under the plain and unambiguous terms of the Policy, CIC had a duty to defend any lawsuit against ATG seeking damages to which the Policy applied, and also to indemnify ATG for any such damages. It asserts that CIC did not fulfill these duties, and instead "turned its back on [ATG]" (Mem. Supp. Mot. S.J. 8) and placed it "in the position of having to settle the Claims without assistance or input from [the Defendant]." (*Id.* 7.) As a result, ATG claims that CIC is liable for its costs, expenses and attorneys' fees in defending itself against various lawsuits.

CIC seeks dismissal of both claims, contending that its filing of the interpleader action with this court fulfilled the terms of the Policy and any duty of good faith and fair dealing it may have owed to ATG. Specifically, with regard to its duty to defend, CIC argues that its instruction to ATG that it retain defense counsel and seek to pay that counsel from the funds deposited into the court registry did not breach that duty. And

4

with respect to the duty to indemnify, it suggests that its payment of the $500,000 Policy

limit into the court registry fulfilled that duty.

In order to resolve this argument, the court must look to the terms of the Policy,

which are undisputed.  As to the duty to defend, the Policy states as follows:

> The Company shall have the right and duty to defend any
> suit against the Insured seeking Damages to which this
> insurance applies even if any of the allegations of the suit
> are groundless, false or fraudulent.  The Company, at its
> option, shall select and assign defense counsel; however,
> the insured may engage additional counsel, solely at their
> expense to associate in their defense of any Claim covered
> hereunder.

(Policy ¶ I.)  And with respect to the duty to indemnify, the Policy provides in relevant

part that:

> The Company will pay on behalf of the insured all sums
> which the Insured shall become legally obligated to pay as
> Damages for Claims first made against the Insured and
> reported to the Company during the Policy Period, arising
> out of any negligent act, error, omission or Personal Injury in
> the rendering of or failure to render Professional Services by
> an insured coverage under this policy.  Provided always that
> such negligent act, error, omission or Personal Injury
> happens:
>
> A.      during the Policy Period . . . .

(*Id.*)  Finally, the Policy contains the following Limit of Liability:

> A.      In the event Claim Expenses are included within the
> limit of liability . . . the limit of  liability stated in the
> Declaration as applicable to "each Claim" is the limit of the

> Company's liability for all Damages and Claims Expenses
> because of each Claim covered hereby.
>
>              \*   \*   \*
>
> The limit of liability stated in the Declarations as "aggregate"
> is, subject to the above provision respecting "each Claim",
> the total limit of the Company's liability under this policy for
> all Damages and Claims Expenses.

(Policy ¶ III.)

The court has reviewed these and other relevant terms of the Policy, and is not persuaded that, in this jurisdiction, they create a continued duty to defend or indemnify once the interpleader action had been satisfied to the full Policy limits. An analogous situation was taken up in *Commercial Union Insurance Company of New York v. Adams*, 231 F. Supp. 860, 867 (S.D. Ind. 1964), the only case in this district on point. In *Adams*, liability insurers, faced with claims arising from an explosion at the Indiana state fairgrounds of at least 13 times policy limits, commenced an interpleader action. The insureds were bankrupt and unable to bear their share of the defense costs. The court held that through the interpleader the insurer could pay the policy limits into the court and resist liability in the hope of regaining the funds. *Id.* at 866. It further held that "[The insurer's] duties to defend and to pay costs in all pending and future actions against their assured, including this action, will terminate forthwith upon . . . payment [of the policy limits into the court registry]." *Id.* at 867.

Other courts similarly have articulated this idea that an insurer's duty to defend is terminated when it files an interpleader action. *Gen. Cas. Co. v. Whipple*, 328 F.2d 353, 357 (7th Cir. 1964) ("since the plaintiff paid into court the full policy limits, plus all costs

and interest, its duty to further defend defendants ceased under the terms of its

contract"); *Denham v. LaSalle-Madison Hotel Co.*, 168 F.2d 576, 584 (7th Cir. 1948)

("there being no further insurance afforded, we are of the view that [the insurer's]

obligation to defend was likewise terminated"); *Allstate Ins. Co. v. Montgomery Trucking

Co.*, 328 F. Supp. 415, 416 (N.D. Ga. 1971) ("Under the law of Georgia as it now exists,

an insurer is relieved of the obligation to defend suits filed subsequent to a judgment

equal to or in excess of the policy limits."); *Nat'l Union Ins. Co. v. Phoenix Assur. Co.*,

301 A.2d 222, 225 (D.C. 1973) ("The policy does not provide for defense against a

claim when the carrier concedes liability to the policy limit."); *Zurich Ins. v. Raymark

Ind.*, 118 Ill. 2d 23 (1987) (general rule that insurer who exhausts policy limits by

judgment or settlement no longer has duty to defend).  Perhaps with this precedent in

mind, the Policy at issue in this case was drafted to include the following provision:

> In no event shall the Company be obligated to pay Damages
> or Claim Expenses or to defend, or continue to defend, any
> suit after the applicable limit of the Company's liability has
> been exhausted by payments of judgments, settlements,
> Damages or Claims Expenses, as applicable.

(Policy ¶ I,B.)

Thus, under the governing law and the Policy terms, CIC's obligation to defend

ATG against lawsuits was fulfilled by its deposit of the Policy limits into the registry of

the court in the interpleader action.  Indeed, its actions were entirely consistent with

federal law, which expresses favor for the liberal use of interpleader actions to resolve

disputes such as this.  *See Reliastar Life Ins. Co. v. Knighten*, 2005 U.S. Dist. LEXIS

26317, No. 504CV221OC10GRJ, 2005 WL 1309411, at *3 (M.D. Fla. June 1, 2005) ("The benefits of an interpleader action to both the stakeholder and the claimants are substantial.  It relieves the stakeholder from determining the merits of competing claims and shields from the prospect of multiple liability; it gives the claimant who ultimately prevails ready access to the disputed fund.")

    If anything, the instant case appears to be an improper end-run around the interpleader action, in which ATG failed to file any breach of contract counterclaim against the Defendant, perhaps because such claim would have been quickly disposed of.  *See Daniels v. Equitable Life Assurance Soc. of the U.S.*, 35 F.3d 210, 214-15 (5th Cir. 1994) (where an interpleader is found proper, breach of contract and tort claims are collaterally estopped); *Lutheran Bro. v. Comyne*, 216 F. Supp. 2d 859, 862-63 (E.D. Wisc. 2002) ("[The] counterclaims are essentially based on the plaintiff's [sic] having opted to proceed via interpleader complaint rather than having chosen from among competing adverse claimants.  Courts have consistently rejected such counterclaims where, as here, the plaintiff was entitled to pursue interpleader relief."); *Monumental Life Ins. Co. v. Lyons-Neder,* 140 F. Supp. 2d 1265 (M.D. Ala. 2001) (summary judgment granted on bad faith and breach of contract claims because insurance company properly initiated interpleader action to determine rightful beneficiary of policy proceeds where deceased's wife was a murder suspect); *United States Trust Co. v. Alpert*, 10 F. Supp. 2d 290, 307 (S.D.N.Y. 1998) ("[Claimants] have not cited to any authority supporting the proposition that the proper commencement of an interpleader action may in itself give rise to a counterclaim against the stakeholder for failing, instead, to have

8

paid the moneys out to the counterclaiming defendant without benefit of court adjudication of conflicting claims among defendants.").  While the claims at issue here are not counterclaims, but instead arise in an independent action, they are the functional equivalent of counterclaims and therefore are governed by the same principles limiting their scope.

In sum, this court finds that CIC cannot be held liable to ATG for breach of contract because of its lawful commencement of the interpleader action.  CIC's deposit of the Policy limits of $500,000 into the court registry in the interpleader action absolved CIC of any duty to defend the lawsuits brought against ATG.  Similarly, because ATG's claim for breach of the duty of good faith and fair dealing arises from essentially the same facts and evidence as its breach of contract claim, it too must fail.

IV.    **CONCLUSION**

For the reasons stated above, the court **DENIES** The Abstract & Title Guaranty Co., Inc.'s Motion for Partial Summary Judgment (Docket No. 26-1) and **GRANTS** Defendant's Motion for Summary Judgment (Docket No. 33).  An appropriate judgment will be entered.

ALL OF WHICH IS ENTERED this 12th day of May 2006.

_____
John Daniel Tinder, Judge
United States District Court

9

Copies to:

Daniel P. Byron
Bingham McHale
dbyron@binghammchale.com

John J. Moore
Stark Doninger & Smith
jjmoore@sdsfirm.com

Laura S. Reed
Riley Bennett & Egloff LLP
lreed@rbelaw.com

Rafael A. Sanchez
Bingham McHale
rsanchez@binghammchale.com